## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PERCY FAVORS, | : | CIVIL NO. 1:10-CV-2123 |
| | : | |
| Petitioner, | : | (Judge Caldwell) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | ; | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

In this case, the Petitioner, Percy Favors, a convicted burglar, attempted murderer and rapist, asks the Court to use the writ of habeas corpus to embrace a novel proposition. Favors, who admits that he was once released prematurely due to a clerical error by the Pennsylvania Board of Probation and Parole, invites us to exalt form over substance,  hold that Favors is now entitled to enjoy the continued benefit of this clerical error, and direct the state to leave this error uncorrected now that Favors has returned to state custody due to a 2007 rape conviction.

For the reasons set forth below, it is recommended that the Court decline Favors' invitation, and deny his petition for writ of habeas corpus.

## II.    **Statement of Facts and of the Case**

The story of Percy Favors' crimes, and how those crimes have led to this habeas petition, begins 32 years ago, in 1978. On March 1, 1978, Favors was convicted of burglary, robbery, conspiracy, and possession of instruments of crime, and sentenced by the Philadelphia County Court of Common Pleas to a term of 8 to 20 years, and 5 to 10 years consecutive, for an aggregate sentence of 13 to 30 years to be served in a state correctional institution. (Doc. 12, Ex. A, Court commitment form). At this time, additional charges of rape, indecent assault, and involuntary deviate sexual intercourse, which had originally been lodged against Favors, were nolle prossed and dismissed by the Commonwealth. (Id.) Ten months later, on April 19, 1979, Favors was convicted of a separate violent crime, attempted murder, and was sentenced by the Montgomery County Court of Common Pleas to a term of 3 to 10 years imprisonment, a sentence which was ordered to run consecutively to existing sentences from Philadelphia County. (Doc. 12, Ex. B, Court commitment form.) By operation of state law, these two sentences should have been aggregated by the state, and construed as a total sentence of 16 to 40 years imprisonment. However, it appears that Favors–who concedes that aggregation of his sentences was called for by state law–was the beneficiary of a significant clerical error that was made when computing his minimum and maximum release dates after the Montgomery County sentence was imposed.

Instead of properly aggregating these two serious state sentences, the Pennsylvania Department of Corrections inadvertently failed reflect the aggregation of all of these sentences to a combined 16 to 40 years sentence.

As a result of this error in aggregating his sentences, Favors was released from state custody on his initial 1978 conviction prior to the proper release date under state law. In fact, state records reflect that, on or about December 13, 1992, Favors was prematurely paroled from his Philadelphia sentences. (Doc. 12, Ex. C, PBPP order to recommit). This error, while grave, would have likely gone unnoticed if Favors had been able to refrain from further violent, sexually predatory behavior. However, in 2005, Favors was recommitted to custody after he was charged with rape by forcible compulsion and sexual assault. (Doc. 12, Exs. C & E, PBPP order to recommit, DOC sentence status summary). Favors was convicted of his role in this violent sexual assault in October of 2007, and returned to prison where he was sentenced to serve a new 25 to 50 year sentence. (Id, Exhibit E, DOC sentence status summary)

Following his return to state custody, the initial aggregation error that led to Favors' premature release on parole was detected and corrected by state officials. Accordingly, on October 29, 2008, the Pennsylvania Department of Corrections re-computed the aggregate 16 to 40 years sentence. (Id., Ex., DOC sentence status summary.) That same day, the Pennsylvania Board of Probation and Parole also took

action to correct its records relating to Favors, notifying Favors that it was rescinding its prior parole orders, and would now consider his case only after he completed service of his existing sentences. The effect of this decision was to rescind all of Favors' prior parole actions, including his prior grants of parole, and parole calculations. (Id., Ex., PBPP notice of board decision.) Favors was notified of this parole board action by December 4, 2008. (Id., Ex. F, PBPP letter to Petitioner.)[1]

Notified of this parole board action, Favors could have challenged any of these decisions, both through the Board's administrative review process, see 37 Pa. C. S. § 73.1, and by filing by a timely appeal to Commonwealth Court. See Bronson v. Pennsylvania Board of Probation and Parole, 491 Pa. 549, 421 A.2d 1021 (1980)(revocation), McMahon v. Pennsylvania Board of Probation and Parole, 504 Pa. 240, 470 A.2d 1337 (1983)(recalculation). Instead, Favors followed an eccentric, halting and equivocal course in the state legal system.

---

[1]While the parties dispute the lawfulness of this action, their submissions are not entirely clear regarding the practical significance of this decision. Certainly, the decision will not immediately affect Favors' release from custody, since he must in any event complete the 25 to 50 year sentence impose upon him as a result of his 2007 rape conviction. It appears that the significance of this aggregation decision is its effect upon Favors in terms of parole revocations. If Favors' sentences remain unaggregated, then he may face lesser parole revocation sanctions based solely upon the undischarged sentence that he had for the 1979 attempted murder conviction in Montgomery County. In contrast, aggregation of these two sentences appears to mean that the parole consequences of this new conviction will potentially be greater for Favors.

Rather than appealing this October 29, 2008 parole board decision to the Commonwealth Court, Favors instead initially attempted to file a petition for writ of mandamus with the Commonwealth Court in its original jurisdiction. (Id., Exhibit G, Commonwealth Court docket.) From this uncertain beginning there ensued a series of filings by Favors, and orders by the Commonwealth Court , orders that were intended by the state court to try to bring Favors' pleadings in compliance with state court standards. Ultimately, after several months, these efforts proved unavailing, and in May, 2009, the Commonwealth Court dismissed Favors' appeal for failure to comply with the court's prior procedural orders. (Id., Ex. H, Commonwealth Court orders.) Favors then attempted to appeal this procedural dismissal to the Pennsylvania Supreme Court; (Id., Ex. I, Pa. Supreme Court docket), but Favors' appeal was denied by that court (Id., Ex. J, Pa. Supreme Court order).

Procedurally barred from having his claims addressed in state court due to his own failure to comply with state court orders, Favors filed this petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, on February 22, 2010. (Doc. 1.) Following the filing of this petition, the parties fully briefed the merits of Favors' claims, (Docs. 5 and 12), but the court in the Eastern District of Pennsylvania elected to resolve this matter on procedural grounds by transferring the case to this district for further consideration. (Docs. 15 and 16.)

Having now carefully considered the arguments of the parties, (Docs. 1, 5, and 12) for the reasons set forth below it is recommended that this petition be denied.

## III.   Discussion

### A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State;
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### (1.)   Substantive Standards For Habeas Petitions

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition

must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

## (2). Deference Owed to State Court Rulings.

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under §2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. §2254(d)(1); or (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C. §2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338-39 (2006); see also Warren v. Kyler, 422 F.3d 132, 139-40 (3d Cir. 2006); Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. §2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734-35 (1990).

### (3). Procedural Thresholds for Section 2254 Petitions.

### (A). Exhaustion of State Remedies and Procedural Default

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker

v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v. Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

While this exhaustion requirement compels petitioners to have previously given the state courts, a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional claims. Evans, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts, even if the state courts decline to specifically address that

claim.  See Dye v. Hofbauer, 546 U.S. 1(2005) (per curiam); Johnson v. Pinchak, 392

F.3d 551, 556 (3d Cir. 2004).

A necessary corollary of this exhaustion requirement is the procedural default

doctrine which applies in habeas corpus cases. Certain habeas claims, while not

exhausted in state court, may also be incapable of exhaustion in the state legal system

by the time a petitioner files a federal habeas petition because state procedural rules

bar further review of the claim. In such instances:

> In order for a claim to be exhausted, it must be "fairly presented" to the
> state courts "by invoking one complete round of the State's established
> appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45,
> 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If a claim has not been fairly
> presented to the state courts and it is still possible for the claim to be
> raised in the state courts, the claim is unexhausted. . . .
>
> If a claim has not been fairly presented to the state courts but state law
> clearly forecloses review, exhaustion is excused, but the doctrine of
> procedural default may come into play. A procedural default occurs when
> a prisoner's federal claim is barred from consideration in the state courts
> by an "independent and adequate" state procedural rule. Federal courts
> may not consider the merits of a procedurally defaulted claim unless the
> applicant establishes "cause" to excuse the default and actual "prejudice"
> as a result of the alleged violation of the federal law or unless the
> applicant demonstrates that failure to consider the claim will result in a
> fundamental "miscarriage of justice." Coleman v. Thompson, 501 U.S.
> 722, 750 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d. Cir. 2002)(citations omitted).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.' This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds.'." Hubbard v. Pinchak ,378 F.3d 333, 338 (3d Cir. 2004)(citations omitted). Given these concerns of comity, the exceptions to the procedural default rule, while well-recognized, are narrowly defined. Thus, for purposes of excusing a procedural default of a state prisoner seeking federal habeas relief, "[t]he Supreme Court has delineated what constitutes 'cause' for the procedural default: the petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Werts v. Vaughn, 228 F.3d 178, 192-193 (3d. Cir. 2000)(citations omitted). Therefore, when examining the second component of this "cause and prejudice" exception to the procedural default rule, it is clear that:

> With regard to the prejudice requirement, the habeas petitioner must prove " 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. In the context of an ineffective assistance claim, we have stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

<u>Id</u>. at 193 (citations omitted).

Similarly, the "miscarriage of justice" exception to this procedural bar rule is also narrowly tailored, and requires a credible assertion of actual innocence to justify a petitioner's failure to comply with state procedural rules. <u>Hubbard v. Pinchak</u>, 378 F.3d 333, 338 (3d. Cir. 2004).

Procedural bar claims typically arise in one of two factual contexts. First, in many instances, the procedural bar doctrine is asserted because an express state court ruling in prior litigation denying consideration of a habeas petitioner's state claims on some state procedural ground. In such a situation, courts have held that:

> A habeas claim has been procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." <u>Coleman v. Thompson</u>, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For a federal habeas claim to be barred by procedural default, however, the state rule must have been announced prior to its application in the petitioner's case and must have been "firmly established and regularly followed." <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Whether the rule was firmly established and regularly followed is determined as of the date the default occurred, not the date the state court relied on it, <u>Doctor v. Walters</u>, 96 F.3d 675, 684 (3d Cir.1996), because a petitioner is entitled to notice of how to present a claim in state court, <u>Ford</u>, 498 U.S. at 423-424, 111 S.Ct. 850.

<u>Taylor v. Horn</u>, 504 F.3d 416, 427-428 (3d Cir.2007).

In other instances, the procedural bar arises, not because of an express state court ruling, but as a consequence of a tactical choice by a habeas petitioner, who

elects to waive or forego a claim in the course of his state proceedings, and thus fails to fully exhaust the claim within the time limits prescribed by state statute or procedural rules. In such instances the petitioner's tactical choices in state court litigation also yield procedural defaults and waivers of claims federally. See, e.g., Johnson v. Pinchak, 392 F.3d 551(3d. Cir 2004)(procedural default when petitioner failed to timely pursue state claim); Hull v. Freeman, 991 F.2d 86 (3d. Cir. 1993)(same). Accordingly, a petitioner's strategic choices in state court waiving or abandoning state claims may act as a procedural bar to federal consideration of his claims, unless the petitioner can show either "cause and prejudice" or demonstrate a "fundamental miscarriage of justice". Id.

### B.    Favors' Petition Is Procedurally Barred

In this case, Favors' petition is fatally flawed in two ways. First, that petition is procedurally barred, since Favors failed to litigate the merits of his claims in the state courts due to his own refusal to abide by the procedural requirements set for him by those courts. Because a habeas claim is procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," Coleman v. Thompson, 501 U.S. 722, 730 (1991), Favors' failure to properly pursue his state remedies with respect to this parole board action now bars federal consideration of this claim.

Moreover, given Favors' clear defaults, this Court cannot review the merits of his procedurally defaulted claims unless Favors shows either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, Favors must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if Favors can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Here, Favors' petition fails to excuse these defaults because Favors has offered no good cause or excuse for his failure to follow the proper procedures to challenge the Board's decisions and orders, nor can he. Instead, it is clear that the Commonwealth Court repeatedly notified Favors regarding what he must do to challenge this action, and Favors simply failed to follow that court's instructions, compelling dismissal of his state case. Moreover, Favors has not demonstrated the type of fundamental unfairness in the parole board's conduct which would permit a

finding of prejudice. Quite the contrary, the parole board's actions with respect to this parole violator seem fitting and just in this case.

Nor can Favors avoid this procedural default by claiming that the failure to review the claim will result in a fundamental miscarriage of justice. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496. Here Favors' procedurally flawed petition does not claim that he is actually innocent. Rather, it simply asks that the Commonwealth be estopped from correcting a clerical mistake in calculating his past sentences, a mistake which only came to light when Favors indulged in new, violent, sexually predatory crimes. The Commonwealth's course of action in this case plainly cannot be seen as leading to a miscarriage of justice; quite the contrary, it simply corrects a past injustice resulting from a clerical error. Therefore, Favors cannot excuse his procedural defaults in state court, and those defaults now bar further consideration of this petition.

## C.    <u>Favors' Petition Fails on Its Merits</u>

Entirely aside from these procedural flaws, Favors' petition fails on its merits. At bottom, Favors seeks through this petition to evade the sentencing result mandated by state law in his case, aggregation of his prior sentences. Favors attempts to avoid

this outcome by citing a clerical error that occurred many years ago, and by asserting

that this error now somehow precludes the Commonwealth from properly applying the

law to him based upon the commission of new, violent crimes by this recidivist.

This Court should decline Favors' invitation to use the writ of habeas corpus

to perpetuate a clerical mistake which benefits the Petitioner for at least three reasons.

First, as a legal matter it is evident that:

> Pennsylvania law requires the aggregation of multiple sentences. "In Gillespie v. Commonwealth, [106 Pa.Commw. 500, 527 A.2d 1061 (1987)], the Commonwealth Court held that [42 Pa.C.S.A.] § 9757 requires aggregation of the minimum and maximum sentences of all sentences imposed to be served consecutively even where they are imposed by different judges in different counties on different days." Commonwealth v. Harris, 1991 WL 1011094 (Pa.Com.Pl. Dec.13, 1991).

Anderson v. Board of Probation and Parole, No. 03-4655, 2004 WL 286870, *1 (E.D.Pa. Feb. 12, 2004).

Since these aggregate sentences are specifically mandated by state law, federal courts

have long held that "the aggregation of the minimum and maximum sentences does

not present a constitutional issue. 'Construing the Act [providing for the aggregation

of sentences] ... we can discern no issue of constitutional dimension which is essential

to Federal habeas corpus relief.' United States ex rel. Monk v. Maroney, 378 F.2d 55

(3d Cir.1967). Thus, [the petitioner's] aggregation issue does not provide a basis for

habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62, 68(1991)(habeas review is limited to constitutional issues)." Id. Therefore, it is clear that the mere fact that state law compels aggregation of these sentences does not provide Favors with any grounds for habeas relief. Indeed, Favors acknowledges in his brief that this sentence aggregation is mandatory under state law. (Doc. 5.)

Nor can Favors use the writ of habeas corpus to prevent the state from correcting this clerical error in his prior sentence calculation. In the past state prisoners have frequently turned to the federal courts in an effort to seek to prevent state officials from correcting clerical errors in sentences, where the original, erroneous sentence in some way benefits the prisoner. Yet, these efforts to use the federal courts to enforce erroneous state sentences, and prevent correction of clerical errors in those sentences, have typically been rebuffed by the courts. See, e.g., Green v. Coleman, No. 10-168, 2010 WL 2035703 (W.D. Pa. April 28, 2010); Eley v. Kearney, No. 03-1141, 2005 WL 899612 (D. Del. April 18, 2005); Jackson v. Carroll, No. 03-311, 2004 WL 2028655 (D. Del. Aug. 31, 2004); Ervin v. Beyer, 716 F.Supp. 163 (D.N.J. 1989); Perschka v. Brierley, 3232 F.Supp. 411 (E.D. Pa. 1971). Instead of allowing the writ of habeas corpus to be used to enforce erroneous state sentences and forbid efforts to correct clerical errors in those sentences these courts have consistently found that: "[A] court may always correct an illegal sentence to make the sentence conform to the

statutory minimum or to the original intent of the sentencing judge without violating the [constitution]. <u>Bozza v. United States</u>, 330 U.S. 160 (1946). '[C]ourts [also] have the power and duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake.' <u>American Trucking Associations, Inc. v. Frisco Transportation Company</u>, 358 U.S. 133, 145 (1958); <u>Gagnon v. United States</u>, 193 U.S. 451, 453 (1904)." <u>Jackson v. Carroll</u>, No. 03-311, 2004 WL 2028655, *5 (D. Del. Aug. 31, 2004).

Nor can Favors prevail in his claim that this correction of his sentence, and the potential imposition of more severe parole violation sanctions for committing a new violent sexual assault, violates double jeopardy. This claim misconstrues the reach of this constitutional guarantee. It is clear that:

> The Double Jeopardy Clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." <u>United States v. Baird</u>, 63 F.3d 1213, 1215 (3d Cir.1995). . . . . It is well-settled that the revocation of parole or probation and the corresponding imposition of confinement does not violate the Double Jeopardy Clause because "these criminal sanctions do not involve the increase of a final sentence, and ... defendant is aware at the original sentencing that a term of imprisonment later may be imposed." <u>Ralston v. Robinson</u>, 454 U.S. 201, 220 n. 14 (1981)(citations omitted). However, the Double Jeopardy Clause prevents a sentencing court from prescribing a greater punishment than that intended by the legislature, <u>Garrett v. United States</u>, 471 U.S. 773, 780 (1985), and it also prevents a court from increasing a valid sentence after a defendant has started serving his punishment. <u>In re Bradley</u>, 318 U.S. 50 (1943); <u>Hill v. United States ex rel. Wampler</u>, 298 U.S. 460 (1936). Nevertheless, a

court may always correct an illegal sentence . . . without violating the double jeopardy clause. <u>Bozza v. United States</u>, 330 U.S. 160 (1946).

<u>Jackson v. Carroll</u>, <u>supra</u>, 2004 WL 2028655, *5 .

Finally, to the extent that Favors' petition seeks to challenge the parole board's decision to rescind its prior, favorable parole orders based upon his commission of new, violent crimes, the short answer to this contention is that federal courts have routinely rejected suggestions by state prisoners that discretionary parole decisions offend constitutional due process, and have denied habeas relief to such petitioners. <u>See, e.g.</u>, <u>Williams v. Pa. Bd. of Probation and Parole</u>, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); <u>Walls v. Attorney General</u>, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); <u>Zuniga v. Pa. Bd. of Probation and Parole</u>, No. 05-5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); <u>Anderson v.  Pa. Bd. of Probation and Parole</u>, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006); <u>Bonsall v. Gillis</u>, 372 F.Supp. 2d 805 (M.D. Pa. 2005); <u>Bachman v. Jeffries</u>, 488 F.Supp. 107 (M.D. Pa. 1980).

These cases are grounded upon several basic tenets of constitutional law. At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7 (1979); <u>see</u> <u>also</u> <u>Rauso v. Vaughn</u>, 79 F. Supp.

2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole). These cases all further recognize that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. <u>Burkett v. Love</u>, 89 F.3d 135, 139 (3d Cir.1996); <u>Rodgers v. Parole Agent SCI-Frackville</u>, 916 F. Supp 474, 476-77 (E.D. Pa. 1996); <u>McCrery v. Mark</u>, 823 F.Supp. 288, 294 (E.D. Pa. 1993).Therefore, Favors may not premise his habeas petition on a claim of some constitutional entitlement to parole.

Moreover, state law clearly calls for the forfeiture of time spent on parole by criminal recidivists like the Petitioner who violate their parole supervision. <u>See</u> 61 Pa. C.S. §§ 6138(a)(2) and (c)(2). This aspect of Pennsylvania's parole statute is clearly constitutional. <u>See</u> <u>United State ex rel. Lawson v. Cavell</u>, 425 F.2d 1350, 1352 (3d Cir. 1970)(rejecting Eighth Amendment and due process claims). Indeed, for the past twenty-five years federal courts have held that "[n]o [federal] constitutional question is involved in the Parole Board's failure to give relator credit for time on parole and its adjustment of the expiration date of his new maximum." <u>See United States ex rel. Heacock v. Myers</u>, 367 F.2d 583 (3d Cir.1966) (expressing "complete accord" and affirming opinion of district court in <u>United States ex rel. Heacock v. Myers</u>, 251 F.Supp. 773, 774 (E.D.Pa.1966)). As this Court observed more than twenty years ago when it disposed of a similar inmate complaint:

Petitioner contends that in taking away his "street time" the Board unlawfully extended his maximum sentence in violation of his rights under the Fifth and Fourteenth Amendments. [The Pennsylvania State parole statute], directing the Pennsylvania Board of Parole to give a recommitted, convicted parole violator no credit for time spent on liberty while on parole, has withstood numerous constitutional challenges in the federal courts. [This statute] has been held not to violate the due process and equal protection guarantees of the federal constitution, and not to violate the constitutional prohibitions against double jeopardy, bills of attainder, cruel and unusual punishment or ex post facto laws. See also, United States ex rel. Heacock v. Myers, 251 F.Supp. 773 (E.D.Pa.1966), aff'd per curiam, 367 F.2d 583 (3d Cir. 1966), cert. denied, 386 U.S. 925 (1967); United States ex rel. Brown v. Pennsylvania Board of Parole, 309 F.Supp. 886 (E.D.Pa.1970); Gomori v. Maroney, 196 F.Supp. 190 (W.D.Pa.1961), aff'd, 300 F.2d 755 (3d Cir. 1962). In view of the foregoing authorities, the Court finds petitioner's contention without merit.

Choice v. Pennsylvania Bd. of Parole, 448 F.Supp. 294, 298 (M.D.Pa. 1977)(footnotes and citations omitted).

These observations remain as pertinent and compelling today as they were in 1977, and continue to rebut any habeas challenge to the parole board's compliance with state law, which refuses to reward parole violators with credit for time spent on parole when, like Favors, they indulge in new crimes.

In sum, Favors' petition presents a procedurally defaulted claim to this Court, and invites this Court to give Favors the benefit of a clerical error by forbidding the state from correcting this error after it learned of the error when calculating Favors' sentence following his latest violent crime conviction. Favors has no constitutional

right to serve an erroneously favorable sentence. Therefore, his petition should be denied.

## IV.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28, United States Code, § 2254,  IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: November 4, 2010